IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EARL MAYFIELD,

      Plaintiff,

v.                                                                    CIV 08-0413 RB/KBM

SERGEANT ESTEVAN MORA,
OFFICER JOHN REIDELL, and
OFFICER TREAVOR L. LAWSON,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Briefing is now complete on the comprehensive *Martinez* Report[1] filed by Defendants.  I have carefully reviewed the *Martinez* Report and all of Plaintiff's pleadings, and find no need to extensively discuss each of many allegations Plaintiff raises.  Instead, with a few minor exceptions noted below, I incorporate the legal authorities and reasoning contained in the *Martinez* Report and in Defendants' reply and, for the bulk of those reasons, agree that this action should be dismissed.  *See Docs. 44, 73.*  I add the following observations to emphasize certain aspects apart from Defendants' arguments that I believe also warrant dismissal of the action.

In this § 1983 action, and Plaintiff's entire suit is predicated on alleged retaliation and/or

---

[1]  Document 44 is the *Martinez* Report and certain documents attached to it were later stricken, with redacted substitutions submitted.  *See Docs. 66, 68, 69; see also Martinez Report* (docket entry).  The redacted documents are attached to Document 68.  Because the *Martinez* Report Bates-stamp numbers repeat and duplicate themselves across the different-lettered exhibits, I will cite it or the redacted exhibits by the Court's CM/ECF-generated numbers.

harassment for filing grievances and filing another lawsuit.  Some of his grievances are based on

his contention that prison officials are not following their own regulations.  Section 1983,

however, only redresses the "deprivation of any rights, privileges, or immunities secured by the

Constitution and laws."  42 U.S.C. § 1983.  To the extent Mayfield seeks to enforce prison

regulations through a § 1983 action cast in retaliation language, relief is unavailable.  *See, e.g.,*

*Trujillo v. Williams,* 465 F.3d 1210, 1214 (10th Cir. 2006) ("To the extent that Mr. Trujillo seeks

relief for alleged violations of state statutes and prison regulations . . .  he has stated no

cognizable claim under § 1983, which establishes a cause of action only for deprivation of rights

secured by the Constitution or federal law.") (internal quotations and citations omitted).

      As for the claims of retaliation and harassment, the vast majority of Plaintiff's complaints

relate solely to "normal conditions of confinement."  Such challenges, without more, are not

actionable.

> [I]t is not the role of the federal judiciary to scrutinize and interfere
> with the daily operations of a state prison, and our retaliation
> jurisprudence does not change this role.  *Obviously, an inmate is
> not inoculated from the normal conditions of confinement
> experienced by convicted felons serving time in prison merely
> because he has engaged in protected activity.*

*Peterson v. Shanks,* 149 F.3d 1140, 1144 (10th  Cir. 1998) (emphasis added).

      It is well-settled in the Tenth Circuit that "prison officials may not retaliate against or

harass an inmate because of the inmate's exercise of his constitutional rights," and this is so

regardless of whether the official's conduct is otherwise unobjectionable.  *Id.; see also, e.g, Smith v.*

*Maschner,* 899 F.2d 940, 947 (10th Cir. 1990).  Nonetheless, to prevail, Plaintiff bears the burden

of showing that the action was taken because of the exercise of his constitutional rights.  In other

words, he must show that "but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Peterson,* 149 F.3d at 1144. The comprehensive record is devoid of this showing under the unique circumstances of this case.

This Court may take judicial notice of its own records. *See e.g., United States v. Estep,* 760 F.2d 1060, 1063 (10th Cir. 1985). In addition, New Mexico docket sheets are available on the Internet.[2] From these sources, the earliest records appear to show that Plaintiff was first involved in a § 1983 and a habeas corpus action in 1992, after his 1991 guilty plea to possession of a controlled substance and promoting prostitution. Another § 1983 suit was filed in 1998.[3] According to the New Mexico docket sheets, Plaintiff was released on probation sometime prior to Spring 2005.[4]

---

[2]   *See* http://www.nmcourts.gov/caselookup/app?com. The New Mexico case lookup system search for "Earl Mayfield" shows one Earl Mayfield Senior as "deceased" and thirty-six other matters for an "Earl," "Earl R.," "Earl Romain," or "Earl Roman" Mayfield. Of the thirty-six cases, twenty-three are district criminal matters ranging from 1979 to 2007. The birth date for the majority of these records is "12/03/1959," with the occasional notation of "12/09/1959" or "12/30/1959." The documents attached to the Martinez Report reflect that Plaintiff's birthday is December 3, 1959.

[3]   For the state criminal conviction, see New Mexico docket sheet D-202-CR-9001235. A § 1983 case captioned, "*Earl Roman Mayfield v. Bernalillo County Detention Center, et al,* CIV 92-0350 JGB/JHG," was filed in April 1992 was dismissed by the Court soon after it was filed. A habeas case captioned "*Earl Roman Mayfield v. Attorney General For The State of New Mexico, et al.,* CIV 92-0349 JEC/WD," was also filed in April 1992 and dismissed soon thereafter. Neither case was appealed.
     The other § 1983 case was filed by counsel in 1998 and captioned "*Earl Mayfield v. New Mexico Department of Corrections, CIV 98-0699 LCS/JHG.* (Doc. 1). The federal action alleged that officers ignored Plaintiff's requests to be housed separately from certain gang members, resulting in Plaintiff being attacked and stabbed and severely injured. It also alleged that officers ignore his medical needs immediately following the attack and after his return from the hospital after surgery and a stay in intensive care. *See id.* Just before trial, Plaintiff attempted to fire his attorney and proceed *pro se,* which was denied. *See id.* (Docs. 52, 54, 55). The jury found in favor of the Defendants, and the case was not appealed.

[4]   For comprehensive documentation of Plaintiff's incarceration, release, and multiple alleged probation violations from 1999 to 2006, see New Mexico docket sheet D-202-CR-9901030. It shows that on December 1, 1999, Plaintiff was sentenced to eight years incarceration and at some point prior to

The events that eventually gave rise to his two most recent federal actions occurred in the Spring of 2006, when Plaintiff was arrested for a probation violation and other matters. He filed suit in February 2007 alleging that various Fourth Amendment violations occurred during his arrest and searches of his home thereafter. *See Mayfield v. Hackett,* CIV 07-0149 JCH/LFG (Doc. 1). In a document filed late in this case, Plaintiff asserts that filing the Fourth Amendment action triggered a series of retaliatory acts by Defendants. *See Doc. 59* at 2 (quoting from *Doc. 55* at 2).[5] However, there was no mention whatsoever of retaliation for filing the other lawsuit in Plaintiff's Complaint. And, it is apparent that what triggered the lawsuit before me was a March 2008 incident where an officer decided Plaintiff could not have a grievance form when he asked for one. *See, e.g., Doc. 1* at 4-5; *Doc. 44-2* at 2-3. Thus, there is no temporal connection whatsoever between the filing of the February 2007 lawsuit (where none of the parties to this case are named as defendants) and this lawsuit filed in April 2008. The absence of any connection fails to satisfy Plaintiff's causal burden.

The initial grievances Plaintiff filed are in almost immediate temporal proximity to the March 2008 incident, but ultimately do not satisfy his burden. Before I turn to the legal reasons why that is so, I first note that the grievance policy submitted with the *Martinez* Report is vague

---

March 2005 was on probation. Thereafter, a long string of alleged probation violation proceedings ensued. They overlap the re-incarceration that resulted in this action.

[5] The New Mexico criminal case where probation was revoked comprised a number of consolidated criminal actions dating back to the mid-1990's. The docket sheet for D-202-CR-9901030 (where Plaintiff pleaded guilty to promoting prostitution) shows that it was consolidated with "CR-06-2016, CR-96-2149, CR-00-0877." These other charges were guilty pleas to, among other things, trafficking controlled substances and aggravated assault against a household member.

4

and confusing about what officers should do with "nongrievable" issues.[6]  Affidavits from various

employees reveal different views on how to interpret the regulations and determine what is

grievable, and the basis for their views is readily apparent from the written policies themselves.[7]

_____

[6]  The four "requirements" the inmate must meet to "initiate a grievance" are (1) the inmate personally experienced the subject of the grievance, (2) filled out his own form, (3) is not simply a personal dispute between him and the employee and (4) is not about a disciplinary proceeding.  *Doc. 68-4* at 8.  The regulations go on to state some items are "grievable" and others are "not grievable," and give illustrations of the differences between the two in certain areas.  These are not, however, illustrations of the nongrievable areas mentioned in the four prerequisites.  Instead, they are other conditions-specific areas, specifically:  telephone usage, medical issues, food service, laundry, recreation, commissary, mail, law library, programs, marriages, in-house visits, publications, visiting and TV viewing.  *See Doc. 68-4* at 9-10.  For example, as to telephone use, access to the free phone call "when in RDT" is grievable but access "in the Pod or Unit Core because an outside phone or cell is blocked from collect calls" is not.  *Id.* at 9.

The regulations also state in two distinct "procedures" subsections that the "Case Manager will then determine if the complaint is a true grievable issue."  *Doc. 68-4* at 10 (sections C.1.c. and C.1.e.).  Either this repetition of the exact same provision in the two sections is a typographical error or is meant to convey that the Case Manager makes this decision both when the grievance is about someone else or is about the Case Manager.  But this is not clear from the face or the context of the procedures.  It does not, for example, explain whether "true" means whether one of the prerequisites is not met, or if one of the other illustrated areas is met.  But even if it means both, nowhere do the procedures plainly say that an inmate with a nongrievable issue cannot have a grievance form or that the Case Manager need not log that grievance.  *See id.* at 8-12.

[7]  For example, Classification Specialist Roseanna Archuleta's affidavit provides that if she determines an issue is not grievable, the she "do[es] not provide [the inmate] with a grievance form."  *Doc. 44-2* at 2.  That occurred with Plaintiff on March 17, 2008 when he wanted to challenge a particular policy "No. 812 which limits the inmates' access to cells during non-lockdown time."  *Id.* at 3.  Subsection C of Policy 812 governs "Entering and Exiting of Inmate Cells" and provides:

    1.      Once an inmate exits his/her room the door will be secured, inmates will be allowed to access to the room on the hour.

    2.      Officer may open the doors sooner to allow the inmate access to the restroom.  However, the doors must be secured upon entering or exiting the cell.

*Doc. 68-2* at 2.

Officer Reidell allowed the inmates to return to their cells once an hour, but instituted a "community bathroom" from one of the empty cells and required the inmates to use it between the hourly returns.  He states he did so for what is indisputably a legitimate reason – to "decrease security concerns [over things such as ] violence, tattooing, and drug activity which typically occurs within individual cells in the pod," by giving inmates access to a "private" and "well properly stocked" communal bathroom.  *Doc. 44-3* at 2.  Plaintiff objected to Officer Reidell's institution of a "communal" bathroom and was given a form to file a grievance on the subject.  He did so on March 12, 2008, stating that "by forcing inmates to use a common toilet you are increasing the spread of MRSA  and other diseases, thus, endangering

As it turns out, because of Plaintiff's "expressed concerns regarding his ability to file grievances, as of early 2009, Plaintiff is now being provided "with a grievance form for every issue he wants to grieve, including non-grievable issues." *Doc. 44-5* at 3. Plaintiff has filed a continual stream of grievances since the March 17, 2008 incident, even before the officer decided to give him forms whenever he asks for them.

I make these observations for three reasons. First, Defendants argue that Plaintiff failed to exhausted administrative remedies and thus fifteen of his claims should be dismissed. *See Doc. 73* at 4-5; *see also Doc. 45* at 4-7. Given the inconsistency with which Plaintiff was provided forms for a period of time, Defendants' affidavits suggest that their own actions rendered the administrative proceedings "unavailable" and thus, have effectively waived exhaustion. *See e.g., Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002); *Gonyea v. Mink,* 206 Fed. App'x 745, 747-48 (10th Cir. 2006) (and authorities cited therein); *Baughman v. Harless,* 142 Fed. App'x 354, 359 (10th Cir. 2005) (same); *Hoover v. West,* 93 Fed. App'x 177, 181 (10th Cir. 2004) (same).[8]

---

people's health & well being". *Doc. 44-19* at 11-12. It was deemed "nongreivable per policy 812 Sec. C doors are to be locked & opened on the hour." *Id.* at 11.

Ms. Archuleta evidently took the position, like the prior dispostion, that "the issue was non-grievable pursuant to . . . 812." *Doc. 44-2* at 2; *see also Doc. 44-3* at 3 ("Ms. Archuleta informed Earl Mayfield that the could not file a grievance regarding an MDC policy."). However, nowhere does 812 or its surrounding policies (redacted or otherwise) say that a dispute over the issues addressed therein are non-grievable. Likewise, the grievance policy does not mention Policy 812, policies generally, or any situation addressing entering cells or use of restrooms in cells mentioned as non-grievable. The affidavit of current Classification Specialist Synpher Castillo similarly draws some conclusions about what are limitations on the grievance process that do not appear on the face of the policy. *See e.g, Doc. 44-5* at 1("if an inmate want to file a grievance on a non-grievable issue . . . I do not provide them with a grievance form."); *id.* at 2 (the policy prohibits inmates from filing "more that one grievance on an issue").

[8] I am in no way suggesting that prisons cannot enact restrictions with their grievance procedures and express no opinion on the subject. *See Friedman v. Kennard,* 248 Fed. Appx. 918, 922-23 (10th Cir. 2007) ("In support of his retaliation claim, Mr. Friedman alleges only that shortly after his transfer to a higher security housing unit he received a letter from jail officials restricting his access to the jail grievance

Second, when Plaintiff was told on March 17, 2006 that his issue was not grievable and he would not receive a form, Mayfield "was not satisfied with [her] explanation," "continued to disagree."  When Defendant Officer Reidell intervened to try to explain, the situation devolved with Plaintiff arguing and Officer Reidell telling Plaintiff to "stop acting like a punk."  *See Doc. 44-2* at 3.  Officer Reidell was almost immediately reprimanded the next day for speaking in an unprofessional manner.  *See id.; see also Doc. 1* at 5.  Soon after that, however, Plaintiff had a series of interactions with Defendant Officers Reidell and Mora, with just about every decision and conversation being classified by Plaintiff as "discriminatory" or "retaliatory," while the officers either deny or provide legitimate reasons for the action.  The same dynamic later continued with Defendant Officer Lawson.  However, temporal proximity between a grievance and the alleged retaliatory conduct alone is insufficient to establish "but for" causation.[9]  Moreover and finally, Plaintiff's continual stream of grievances chiefly over normal conditions of

---

system because of recent abuse.  He does not allege that his transfer was disciplinary as opposed to administrative in nature, or any other basis for inferring a linkage between his use of grievances and his transfer.").  I am simply pointing out that the policy at issue here is unclear and not consistently applied.

[9]  *See, e.g., Branham v. Workman,* 2006 WL 950656 at * 5 (10th Cir 2006) ("We agree with the district court that Branham has not alleged any facts other than this temporal proximity to support his claim of retaliation.  This fact, by itself, is insufficient to show a retaliatory motive.");  *Flemming v. Corrections Corp. of America,* 143 Fed. App'x 921, 924 (10th Cir. 2005) ("we do not believe that a reasonable jury could find for Mr. Flemming on the evidence presented with regard to this claim.  We acknowledge, as urged by Mr. Flemming, that the actions were in close temporal proximity to the assertion of Mr. Flemming's rights.  But even considering the temporal proximity, as the district court concluded, no reasonable jury would find that Mr. Torbati would not have taken either of the complained-of actions "but for" Mr. Flemming's invocation of his rights.  *See Peterson v. Shanks,* 149 F.3d 1140, 1144 (10th Cir. 1998); *Smith,* 899 F.2d at 949-50. . . .  We affirm the district court's decision to grant summary judgment to defendants on this claim.");  *Wright v. McCotter,* 1999 WL 76904 at * 1 (10th Cir. 1999) ("Standing alone, some temporal proximity between Plaintiff's grievance and lawsuit filings and the administrative segregation does not constitute sufficient circumstantial proof of a retaliatory motive to state a claim.  *Cf. Smith,* 899 F.2d at 949.").

confinement, actively _negates_ any causal link between the grievance and retaliation.

For example, in affirming a district court decision for "substantially the same reasons," the

Tenth Circuit specifically noted that

> [t]he uncontroverted evidence indicates that defendant had a legitimate reason
> for shaking down plaintiff's cell - other inmates alleged that he was engaging in
> sexually predatory behavior. And the only connection between plaintiff's refusal
> to sign off on the grievance and his transfer was temporal proximity. _That is_
> _simply not enough in this case, particularly given the evidence that plaintiff_
> _regularly filed grievances and refused to sign off on them._

_Thomas v. Werholtz,_ 272 Fed. App'x 687, 689-90 (10th Cir. 2008) (emphasis added).  In another

decision, the Tenth Circuit stated that:

> Here, Mr. Treff has shown temporal proximity, in that he has pursued so many
> grievances and lawsuits that _any_ action taken by a prison authority could be
> regarded as in proximity with one of his legal filings.  Ms. DeHaan, however, has
> presented legitimate and nonretaliatory reasons for her actions.  Under these
> circumstances, mere proximity of time is insufficient to create a genuine issue of
> fact as to motivation. Because Mr. Treff has produced no additional evidence of a
> retaliatory motive, the district court properly entered summary judgment on the
> claim.

_Treff v. DeHaan,_ 1997 WL 543373 at *1 (10th Cir. 1997) (emphasis added); _c.f. Wright,_ 1999 WL

at * 1 ("while Plaintiff claims that Defendants imposed segregation in May 1997 in retaliation for

his filing a grievance in March 1997, we think that Plaintiff's earlier legal filings in 1991 and 1993

negate any inference of retaliation that may be drawn from temporal proximity.").

Accordingly, I find that "no jury could reasonably find that defendants' allegedly

retaliatory motives were the 'but for' cause of their actions.  Because [Plaintiff's] litigation efforts

ranged over such a lengthy period, timing alone does not supply an inference of retaliation."

_Northington v. Zavaras,_ 2000 WL 1133128 at *3 (10th Cir. 2000).

Wherefore,

IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment on the basis of the *Martinez* Report *(Doc. 45)* be granted, and this action dismissed with prejudice.

THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.

_____
UNITED STATES MAGISTRATE JUDGE